Will hear argument next in the case of Kormi v. Lee. Mr. Mandel, you should speak when you're at the rostrum. Good morning. Good morning. And may it please the court. My name is Alan Mandel. I represent the plaintiff in this case, the appellant in this case, Megan Kormi. She is in the courtroom with us as well as my trial partner, Jill. I'm sorry. It's hard for me to hear you. I'm very sorry. So our appeal poses two legal issues, which touch on federal statutes, section 1988, cases interpreting section 1988, federal public policies with respect to the client's incentive to enforce their civil rights, Illinois common law, Illinois public policy. Counsel, why does Illinois law matter? This is a case under a federal statute, 1988. Why does Illinois law contribute at all? We believe the leading case, the one that we're asking you specifically to follow, is  And the analysis in Pony- matters. Going back to 1897, Illinois law, the Illinois Supreme Court has found that No, no. Look, you cannot tell me what the state court has found. You need to tell me why, as a matter of federal law, we should be looking to state law. As I read the analysis of the federal courts, the underlying state law with respect to whether or not a personal injury claim may be assigned is a fundamental aspect of the analysis here. I don't understand it. Evans against Jeff Deeds says that as a matter of federal law, the client has the property right to the attorney's fee award. Now, where does state law then get in, since Evans is a decision under federal law? Well, Evans didn't deal with an assignment. The cases that deal with an assignment, note that the statute itself does not make a finding with respect to whether or not, the Supreme Court has said a number of times, a 1983 Act claim is a personal injury claim. There was an open question- For purposes of the statute of limitations, but accrual is a matter of federal law, and all the substance under 1983 is a matter of federal law. I don't think you're getting the gist of my question. Anyway, please proceed. No, no, fair enough, Your Honor. There is no federal case that holds that the attorney's fees provisions under Section 1988 are not substantive claims that can't be assigned. I guess I'm asking this court to find, as the Pony Court did, that there is a syllogism between federal law, which says it's the client's- Let me ask a different question. What is the difference between an assignment of the 1988 claim and a promise to pay over to the attorney whatever the client is awarded under Section 1988? And that's covered in Pony in a number of cases, there's a difference between- I'm not asking you about a number of cases. I'm asking you to explain what you see is the difference between these two things. There is a difference between assigning a percentage of the recovery of a case from assigning a substantive right, and if the client and the attorney are in alignment, you don't have a problem. When the attorney takes a substantive right- And you've responded by saying, well, there is a difference. Can you explain what you see as the difference? If I assign a 33% interest in the recovery- No, look. Listen to my question, please. What is the difference between assigning to the lawyer all of the attorney's fees recovery under Section 1988 and promising to pay the lawyer all of the attorney's fees recovered under Section 1988? Client consent. Pardon? Client consent. No. We are assuming the client has consented to either of these agreements. What is the difference between these two agreements? The first agreement, a contingent fee agreement, does not give- I'm not asking about contingent fees. You didn't listen to my question. Section 1988 has nothing to do with contingent fees. Let me give the question again. What is the difference between assigning to the lawyer all of the money awarded by a district court under Section 1988 and promising to pay the lawyer all of the money awarded by the district court under Section 1988? I believe- I'm going to give it my best shot. I believe the difference is who controls the claim, and under JFD, as you pointed out, it's the client's claim to control or to waive. And if the client is not advised with respect to those rights, as happened in Pony, then there is a big difference between- You haven't explained what that difference is. In either event, the lawyer ends up with all of the money awarded by the district court under Section 1988. The client gets the principal recovery, and the lawyer gets the money under both of these options. What am I missing? Why is there any difference? I believe the problem in this case is to what extent could an assignment- not a contingent fee agreement- an assignment- There are no contingent fees under 1988. There are no contingent fees in this case. Under the assignment at issue here, the client lost control of her settlement. And that's specifically referred to in JFD, and that's specifically emphasized by the threat towards the end of the representation that we will enforce, to the full extent of the law, our assignment. And there is no case, Your Honor, which defines the full extent of the law to which an assignment- You just haven't explained what the difference between these two legal mechanisms is. I understand your argument that threats were made in this case. That went to a jury trial at which your client lost. I'm just trying to figure out what, in principle, is the difference between an assignment and a promise to pay, where the promise to pay can be enforced by a lien on the attorney's fees. The client loses control of her right to settle her case on her terms. She loses her control to, as JFD found, to waive her claim for fees. Can you tell me at what point did or do the attorney's, I guess, fiduciary duty kick in, in regards to the assignment? So, under Illinois law, and I believe federal law as well, if the attorney has unique and specialized information that has a material effect on the representation, then what's required is full disclosure of that information, a written suggestion that the client seek independent legal advice, and thirdly, that the transaction, the assignment itself, was fair in fact. That speaks to confidentiality more than it speaks to fiduciary duty, though, doesn't it? Judge Pryor's question is trying to pin down what appellant's position is as to when that fiduciary duty kicks in. Right. For example, place that question on these facts. When do you say that happened? When they negotiated for the assignment. At the same time, they negotiated separately a retention agreement. And how many, this is after the 15 hours of review by your clients? Yes. Not by my clients, by the defendants. By the defendants, I'm sorry. Yes. Right. The fiduciary duty, which is a more subtle question than the simple enforceability of the assignment, the fiduciary duty is a more nuanced analysis, but it really turns on the disparity of information between the lawyer and the client at the time. But isn't that every client? I beg your pardon? You would always have a fiduciary duty with every client based on your representation because I haven't heard you articulate what special information. I know you're wanting to analogize it to the Cormie case was here, that was present. The special information is, as Mr. Lee knew, that no court of appeal had upheld the assignment. Many had questioned it. Some state courts had found it unethical. Some federal circuit courts had found it void and unenforceable. If you're going to offer it. But in the Seventh Circuit. Yes. The Seventh Circuit hasn't ruled on this issue. If I could talk about Pony for a second. The lawyer in Pony, whose assignment was found to be void and unenforceable, had a much different assignment clause because it says not only is the client waiving all rights to prevailing party status, to obtain a judgment, collect, receive statutory attorney's fees, et cetera, but there's a disclaimer in Pony that you won't find here that I think is dispositive. Client acknowledges and agrees that the foregoing assignment and transfer may make it more difficult for client to settle the case because client will not possess the powers or rights to waive, apply for, obtain judgment, collect, or receive the attorney's fee award. Now, Mr. Mitchell in the Pony case understood what our ethics expert wanted to bring to the light of the court, which is there is an inherent conflict of interest when a lawyer takes an assignment. I beg your pardon? Yeah, in Martin, though, there was an adoption of the second, of the restatement second of agency under agency law and said there must be a peculiar trust and confidence. That's with respect to a stockbroker. The law is that when a client... And we're trying to apply it in this context. Right. So I'm trying to follow the argument this morning of why are we able to pull it from that context and apply it here. As a matter of law, an attorney-client relationship is a fiduciary relationship where the client must necessarily... Once the attorney is retained, once the attorney-client relationship is established. I'm asking when does the fiduciary duty on these facts, looking at the restatement, would have applied here? When the attorney asks for an assignment that has never been approved by any court, or found unethical by five different state ethics panels, and has been found void and unenforceable by at least two federal circuit courts. I'm sorry. You've given a different answer to Judge Pryor than you gave to me on timing of fiduciary. I apologize. How did my answer differ? Because now you're invoking other state authorities with regard to when it was. You told me it was after the study that the appellees had done and made their timing. I apologize. I misunderstood your question. To be clear, the work they did beforehand is not relevant. What's relevant is the day they present the assignment but don't explain it with specialized knowledge as to its unenforceability, or at least its questionable enforceability, is when the fiduciary duty triggers under Martin, under the bankruptcy court's decision in Carr, which found preexisting fiduciary duties as it relates to lawyers negotiating their fee agreements. You can't hand a client a loaded gun and say, don't worry about this, but I have it, and you can trust that I'll use it only for your benefit. If there are no other questions, I shall wait for rebuttal. Thank you. Certainly, Mr. Mandel. Mr. Meyer. Good morning. May it please the Court. Good morning. I'm Dan Meyer, a representative for Lee in the underlying matter in here. My intent this morning is to address the fiduciary questions and specifically whether or not a generalized fiduciary duty arises before the formation of the attorney-client relationship. And respectfully, I'll suggest to the Court that it does not. The general rule is that an attorney owes fiduciary duties during the attorney-client relationship but not before that relationship is formed and not after it has been terminated. There have been exceptions. I'll call them exceptions. I think more accurately what I mean to say is that there have been instances when the courts have imposed upon a lawyer a certain duty, whether you call it a fiduciary duty, an ethics duty, or some other type of duty is more or less besides the point. But there are certain instances, pardon me, where that has occurred. But if you look at the case law and the language of the case law in those instances, every one of them finds their source in ethics. They find their source in the rules of professional conduct. I'd like to start, if I may, with the general rule. This court roughly 15 years ago in Maxim addressed a very similar issue that we're dealing with here and asked the question, when to one of the questions that was asked of my friend earlier, when does the attorney-client relationship begin? Maxim states the generalized rule that there is a presumption of invalidity when an attorney engages in a business transaction with a client during the relationship. That doesn't move the ball on the topic that we're addressing today. The question is when does that attorney-client relationship begin? As the district court noted in this case, and I'm going to quote, fiduciary law does not send a dark cloud of presumptive impropriety over the contract that established the fiduciary relationship in the first place and fixes the terms of compensation for it. And the district court was quoting Maxim. Maxim then raises the question, when does that relationship begin? We know here that an attorney-client engagement letter was executed by both the appellant and appellees in January. The fiduciary duty that they're attempting to enforce through the district court action and before this court attaches, so the argument goes, well before that point in time. The state court case, the Illinois Supreme Court case of Pagano, though, addresses the question of when the attorney-client relationship begins, when it ends, and when the fiduciary duties attach. Pagano stated very clearly that the fiduciary duty attaches upon the commencement of the relationship, and there is no fiduciary duty prior to that, not a generalized fiduciary duty prior to that. We, of course, know that there are instances where that duty has attached earlier. They're very specific instances, though. Before I get to those, I do want to address the two Martin cases from the Illinois Supreme Court. My friend contends before this court and before the district court that those cases are somehow dispositive. He contends that they establish as a matter of law. What did you say about the question that I asked Mr. Mandel about why state law is relevant? I think state law is relevant to this question because the district court was sitting in diversity jurisdiction. That was the only basis for its jurisdiction. This is a legal malpractice case mixed with fiduciary duty issues. The underlying case was a Title VII case, which would, of course, give federal jurisdiction to the district court, but the malpractice case was premised solely on diversity of citizenship. This assignment was negotiated in connection with a case that would be litigated under federal law where federal law determines the amount and recipient of fees. Why should the law change in a follow-up suit? If something was governed by federal law initially, why would it get to be governed by state law later on? I don't think that the question of the fiduciary duty was an issue in the underlying case, meaning the 1983 case did not involve a question of whether there was a fiduciary duty between Ms. Cormie on the one hand, the appellant, and the appellees on the other. That issue only arose in the follow-on proceeding. That was a diversity jurisdiction proceeding, and I think state law does assist the court. I understand your point. To me, and I'm not saying that your point doesn't matter. I do not want my next comment to be misinterpreted, but I think both federal law through cases like Maxim and the district court opinion in Block and the state law as evidenced through Pagano are the same. So to be blunt and simple, it does not matter to me whether the court applies federal law, meaning Maxim, or state law, meaning Pagano, because the outcome remains the same. I do want to take a mic. I'm going to cede my time here in a moment. I want to address these instances, and I'm going to do it briefly, where our courts have imposed a duty on a lawyer prior to the formation of the attorney-client relationship. Westinghouse is one of them. It's a Seventh Circuit case. That goes to one of the questions the panel asked earlier about confidentiality. Westinghouse is simply the pre-Rule 1.18 rule of professional conduct. Westinghouse says that when a lawyer receives information in confidence from a non-client, the lawyer cannot then use that information against that non-client in later litigation. That's what Rule 1.18 does. But Rule 1.18 relates to prospective clients. Our Supreme Court, pardon me, the Illinois Supreme Court, in drafting that rule and adopting it in 2010, addressed that question, added that rule in so that it is clear what protections a prospective client gets. And it was very limited in affording those protections. Don't use confidential information against somebody who has given it to you. It did not give any broader rights. And I'm running out of time. Thank you, counsel. I don't even think I can complete a thought, so I'll cede my time. We do ask that the court affirm the district court's judgment. Thank you. Ms. Hamilton. Good morning, Your Honors. And counsel, may it please the court, my name is Amanda Hamilton and I represent Defendant Aptly Antoinette Schott. And I will be speaking as to the assignment issue. In requesting a reversal of the jury's verdict in the district court's orders, plaintiff requests that you find that an assignment of the right to collect attorney's fees pursuant to Title VII is against public policy. Further, the plaintiff requests that you reverse the district court and the jury's verdict and find that an assignment of the right to collect those attorney's fees is independent grounds for a separate claim for a breach of fiduciary duty. Respectfully, this request has no basis in the statute or in the case law and the district court's order should be affirmed. Now, in permitting the award of attorney's fees and discrimination claims, this court and others has recognized the need to incentivize attorneys to Should we jump right in and answer the question of why is state law relevant? Honestly, I think that federal law is dispositive as to the assignment issue and I think this court's decision in Pickett in particular, that would be Pickett be shared in health care centers, is dispositive as to that issue. For example, this court in Pickett went through the legislative history and the need to incentivize attorneys to take on these types of cases. And in Pickett, for example, the attorney had a flat fee agreement where he would get $7,500. He also had an agreement in his retainer that he would receive one-third of the total amount recovered for his client. And then he also had a provision saying that he was going to take 100% of the statutory attorney's fees provided. Now, in that instance, the plaintiff was a housekeeper who claimed sexual harassment and she was ultimately awarded $65,000 in damages. The attorney sought $131,000 in attorney's fees. And this court, in finding, you know, in evaluating the propriety of the total fee and the fee agreement, found that the attorney is separately entitled to both a contingency fee and an assignment of the statutory fees, saying, quote, private fee agreements and statutory fee awards can coexist and that a plaintiff is free to contract with her attorney to pay a contingent fee in addition to assigning rights to the statutory fee. That's on page 643. This court specifically held to hold otherwise impedes plaintiff's right to contract and plaintiff's ability to attract competent counsel. And the purpose is to secure competent counsel. Now, Your Honors, I'd like to note that in footnote 5 of that opinion, this court noted that it was somewhat concerned that the plaintiff in that case was an unsophisticated party and there was maybe a question as to whether or not she understood the, quote, steep compensation agreement. However, this court noted that the Eighth Circuit in Rossby, Douglas County, found that the only appropriate agreement would be where the attorney would receive the greater of the two, i.e. either the statutory award of attorney's fees or the contingent fee agreement, but instead said, quote, although we believe that a contingent fee contract that allows for an offset can be more just, we cannot conclude that an offset provision is legally required. Now, in this case, plaintiff was a sophisticated party. She had an undergraduate degree in business, she had an MBA, and she previously had engaged an attorney to pursue a separate set of discrimination claims against a separate employer and had settled those claims. That's at docket number 575-20, pages 4 and 5. Moreover, the plaintiff had previously engaged a different attorney in her same case against Deloitte in this underlying case, Mr. Drew Peel, and notably the engagement agreement with Mr. Peel provided for a flat fee, 100% of all statutory fees awarded, and a 35% contingency fee amount of any other amount recovered. That's at docket number 575-21. Now here, the retainer agreement that plaintiff signed with defendants is exactly what this court referred to in Pickett as just. It provided for an advanced retainer plus one-third of anything recovered over $40,000. It also provided that the defendants would reduce dollar for dollar any amount of the contingency fee owed by Cormie for every dollar they were awarded in statutory attorney's fees. Defendants' fee agreement therefore included the offset that this court held was more just but not legally required, and that fee agreement is found at docket number 563-1. There's simply no basis to find that the defendants' agreement violated public policy as articulated by this court or that it was so manifestly injurious to the public that it should be deemed void and unenforceable. Your Honors, no court has held that an assignment of the right to collect statutory attorney's fees is against public policy, void, or unenforceable, and certainly no court has held that the existence of any such assignment constitutes a breach of fiduciary duty. The district court correctly barred the plaintiff from offering expert testimony that the retainer agreement in this case was void and against public policy and or constituted a breach of fiduciary duty. We respectfully request that the district court's orders be affirmed and that the court's order entering judgment on the jury's verdict be affirmed as well. Thank you. Thank you, Your Honors. Mm-hmm. Thank you, Counsel. Anything further, Mr. Mandel? You need to come to the rostrum before talking. I want to make sure that I answer all the court's questions. There seems to be some concern as to whether federal or state law applies. Every case that we've cited that reviewed an assignment of the right to collect attorney's fees under Section 1988 or the Equal Access to Justice Act or some other prevailing party claims have all found, relying on PONY, that such assignments are unenforceable. Illinois state law says all claims, all personal injury claims, are unassignable. There's no conflict. Thank you, Counsel. Thank you. Very good. Your time has expired, Counsel. Oh, I thought I reserved. Your time has expired, Counsel. Your Honors, thank you for your time.